The next case will be Dunston v. Governor of Virgin Islands, No. 16-3234. I'll speak for myself. This case is a little bit of a head-scratcher as to why we're all here. Hopefully, you're going to be able to explain that to us. Sure, Your Honor. I'm going to guess that you... Hasn't this been all solved legislatively? It has been solved prospectively, Your Honor. If I may, before we get into the substance, I would like to reserve three minutes for rebuttal. Yes, that's fine. Granted. Just to get that on the record. But to return to your question, Your Honor, the unification bill that was enacted this summer solved the problem prospectively. Why doesn't it solve it for this instance, too? Because, Your Honor, the act goes into effect on the date it was enacted, which is July or August of this year. And it provides that the presiding judge going forward after the act will be the presiding judge who was in office at the time that it was enacted. Who's that? Well, that's what this case will decide, Your Honor. If indeed the governor's position is it's Judge Willick's. If that's not true... He might have, but a temporary restraining order was entered preventing him from doing that. Yes, Your Honor. And that's correct. And we're here to argue that that was... In the fact temporary restraining order is invalid. All right. Even if it had been invalid... Well, let me ask it this way. Excuse me. Did the governor actually make a formal appointment? Of Judge Willick's? Of Willick's? Yes, he did, Your Honor, I believe. And what date was that? He signed a document on what date to appoint Judge Willick's? I don't know off the top of my head. I can check my appendix. I think it's in there. My recollection was that he made an announcement. He intended to remove Judge Dunstan on an effective date. And shortly before, maybe the day before the effective date of the removal, a temporary restraining order was entered. You may be correct about that. It may have happened before the formal appointment occurred or designation in this case. Okay. But then in that case, then he was simply prevented from making such a designation by... Absolutely, he was. And if the legislature had not acted, we would be here adjudicating whether or not your client had the right to remove or not. But in the meantime, the legislature has intervened and said that Judge Dunstan, who was then and remains the presiding judge, is allowed to remain in office until the expiration of his term. I don't think that's correct, Your Honor. I don't think that the action of the legislature that post-dated the beginning of this lawsuit can act to moot the case unless it's retroactive to some earlier date before the lawsuit began. Well, that's true if and only if Judge Dunstan at some point of time ceased being the presiding judge. And what I'm wrestling with, and perhaps my colleagues as well, is that it does not appear from this record that Judge Dunstan ever ceased being the presiding judge. And if I'm wrong on that, please show me where and when and how he stopped acting as presiding judge. Not just acting, but being the presiding judge. Right, being. Well, by virtue, if indeed the governor has the power of designation, and that power is not circumscribed in some way, then his letter to then presiding Judge Dunstan indicating his intention to remove him and designate Judge Willicks in his stead operates in effect as a removal. How do you get that? Why should we not take the governor at his own word? The governor's letter says you're going to stop being the presiding judge as of date X. At date X minus one, there's a temporary restraining order entered that prevents that from going into effect. You can say it was a bad order, it shouldn't have happened, but it happened. It is what it is. A judicial order was in place that said, we're frozen in time, nothing's going to change as to who's where while we sort this out. Then the legislature intervenes. That's the sequence of events as I understand them. If I'm wrong about the chronology, as Judge Hardiman said. No, I think you're generally correct. So at what point is it the case that Judge Dunstan ceased to be the presiding judge? He was the presiding judge. The governor who claims to have the power to do something specified the date on which he would stop being presiding judge. Before that happened, a judicial order prevented that from occurring. Then the legislature intervenes. How in that arc of time do you get to Judge Dunstan is not the presiding judge? Well, I think, Your Honor, at the time that the lawsuit was commenced, as you point out, the TRO was entered so that we can sort all of this out. Once this is in fact sorted out, either by this court or by another court, then you return to the point at which that order issued. Well, that seems to ignore the whole idea of something being moot. The whole notion of something happens that makes the decision-making irrelevant. At this point, you want us to go back in time and undo something which the legislature has already changed. They've changed the playing field. We can't ignore that they've changed the playing field, can we? I think you can, Your Honor, because I don't believe it could possibly be the correct outcome that by sinking a TRO before the governor was able to enter the order. Remember, that's what the TRO prevented, was him appointing, designating Judge Willicks to the position. Getting a TRO in those circumstances and then having an external event happens that doesn't purport to be retroactive, then he's effectively gained the system. Don't we risk running afoul of the legislative enactment? I imagine the legislature said, all right, who's the presiding judge right now? It was clear who was. Then they said, basically, this goes with the incumbent forward. It does not strike me as at all obvious that it was clear who it was, Your Honor. I think everyone involved regards there as being a significant dispute about what the answer to that question is. Why do you think, Mr. Eaton, that the legislature chose to act, if not with the intention of taking this question out of the courts and deciding it as a matter of the will of the people? It seems pretty clear to me that this was not something that they did because it just struck them one day, hey, let's talk about presiding judges. They were responding to an interbranch conflict and deciding how they wanted to fix it. I don't think that's correct, Your Honor. What do you have in the record to indicate that there was some other motivation for the subject of a publicized interbranch conflict that was playing out in the federal court? The unification bill in its origin substantially predates all of this, Your Honor. The unification bill was a significant piece of legislation that worked its way through the system for a considerable period of time and was the subject of a considerable amount of debate. It had nothing to do with the fact that Governor Mapp and Judge Dunson were in a fight in federal court. I don't believe there's any coincidence of timing that this happened. That's correct, Your Honor. I don't believe there's any suggestion that this was a response to this dispute. The governor signed this bill, I assume, right? He did. In fact, he supported it. And yet he acted contrary to it weeks before it was enacted. In what way? That he exercised his supposed right to remove. Well, that was the law at that time. Why would he not exercise the power? Well, it may or may not have been, but he was supporting a bill that would... All right. I mean, I suppose you could say that. In fact, I had. Okay. Your Honor, if this exhausts this line of questioning, I'll proceed to the other issues that are presented. Okay. Okay. How's my time getting low? Your Honor, on the jurisdictional issue, the threshold question in the case is whether the federal district court, whether Judge Dunstan's claim of entitlement to the position of presiding judge, a position that both exists and that he holds pursuant entirely to local law, nevertheless arises under federal law for purposes of federal jurisdiction, because he raised an argument, the local statutory scheme to which he claims entitlement, if interpreted a certain way, violates the separation of powers. I think, Your Honor, I don't think it's disputed at any level that this position is a local law position. The Virgin Islands courts are created by the local government. The position was created by the legislature. The authority to designate or not is created by the legislature. So wouldn't you have thought that if they had intended for the governor to be able to remove the presiding judge, the legislation preexisting the change would have been clear about that? I mean, our Kendall versus Russell opinion indicates that... It was a brilliant opinion. We're very admiring of it, Your Honor. Yeah, I appreciate that. That when one branch of government is given the power to remove officers from a coordinated branch, then we expect that's going to be not left to inference or presumption. Yet you're here arguing precisely that, that we should infer that the government, the governor's got that power because it's certainly not spelled out, is it? It is not, Your Honor. But how do we deal with Kendall versus Russell? Well, Kendall versus Russell is very specifically about the removal of a judge. This is clearly not the removal of a judge. I don't think even Judge Dunstan disputes that this is about the removal of him from a separate position than superior court judge. He remains a superior court judge. But you're, but there's no question it's removing him from the office and responsibility of presiding judge. That's right, Your Honor. There's a number of sources of potential authority for this, but the primary one is simply that an untrammeled authority to designate or appoint typically carries with it an authority to remove absent some extant provision limiting that power. And in this case, there simply isn't one. That seems to, I'm having trouble making that square with what we said in Kendall versus Russell, which is not that it's incident to or it's natural that it would attend that. We said, if you're going to have the power to remove officers from a coordinate branch, we'd expect the legislature to make that plain. It sounds like what your argument is, is that the office of presiding judge is different. It's like not big enough or not important enough. Well, it's not the compass within that rule. Is that the argument? I think you have to read Kendall, Your Honor, with an eye to the fact that it is about the very basic level. Well, what is this? Well, that's the separation of powers about the governor saying, you're no longer the administrative head of that court. You are no longer in that position. That's the executive speaking to the judicial branch and saying, you, out. You can still be a judge, but you won't be running anything except your cases. Beat it. I mean, more politely. Well, Your Honor, indeed. And of course, that's the very question on the merits is, is in fact this a position that implicates the separation of powers? Our argument has been from the beginning that it does not, because this is a primarily designated by the legislature and consistently found by the local courts, including the Supreme Court of the Virgin Islands, to be a purely administrative position with no adjudicative powers. Do they have the power? Does the presiding judge have power associated with mandamus authority over that? He does by court rule, Your Honor. The legislature did not confer upon him that power. But he's got the power. He's got the power associated with venue, right? Well, I think, Your Honor, if you read Henry Fleming and the other cases that are on point in the local courts construing local law, I think you have to read them to understand that court rules that confer that at least on their face confer authority beyond that, which is merely administrative, should be interpreted that they are, in fact, only administrative. Well, I. And Henry Fleming, for example. Stick with me. Does the presiding judge have or not have the power to review and approve all transfers of venue? He does. That is by statute, Your Honor. Okay. Does he or doesn't he have the power to make decisions associated with bail? Yes, he does, Your Honor, by rule, not by statute. Okay. So by rule or by statute, he's operating with power to make mandamus decisions, bail decisions, venue decisions. These are matters which are typically thought of as judicial functions, not mere administrative or, you know, functionary kinds of actions, aren't they? I think, Your Honor, particularly with respect to mandamus and bail, I think that is our intuitive reaction. But I think you have to read Henry Fleming, in which the Supreme Court of the Virgin Islands looked at a very similar issue, which was does rule 14 of the Superior Court, which purports to give the presiding judge certain powers to hear certain kinds of superior court judges, and the actual issue was whether on a mandamus case, that was an alternative route to relief that prohibits the mandamus. But what it said was, in light of what the legislature did in establishing this position as the administrative head of the courts, we have to interpret this court rule as conferring upon him no more authority in that. And therefore, he has no authority to do anything that is beyond the administrative. The mandamus rule has never been tested. As far as I'm aware, it's never been used, actually. But under Henry Fleming, I think they would have to come to that same result. I'm well over time. Would you prefer me to go on, or would you prefer me to stop? I think we'll hear you on rebuttal. Okay. Thank you. Thank you, Your Honor. Good morning. Morning. Picking up where opposing counsel left off, this Rule 14, although is somewhat amorphous, all the Supreme Court cases have said in regard to that is that the presiding judge in his capacity as presiding judge does not sit as an appellate court, does not make substantive decisions, does not tell courts how to rule. It's the parallel power of the judicial counsel in the federal system. Instead of picking up where he left off, why don't you start, if you would. It would be most helpful if you would address this mootness concern. Are we wrong? Well, I shouldn't speak for anybody but me, but am I incorrect in understanding the chronology here? There's a letter from the governor. It says, as of a specific date, you will no longer be presiding judge. But before that takes effect, a temporary restraining order is put in place to prevent it from taking effect. Exactly. Okay. And then at some point before the permanent injunction is entered, the legislation goes into effect that we've been talking about. It goes into effect. All right. So is there a point in time where Judge Dunstan ceases to be the presiding judge or is he the presiding judge in office when the legislation takes effect? He's absolutely been the presiding judge without interruption during that entire period. And the legislation says that nothing in this new act shall be construed to allow the governor to remove the presiding judge from office. So if that is not a clear definitive policy decision by the legislature, I don't know what is. But so his term ends when the legislature has prescribed? I beg your pardon? His term as presiding judge ends when the legislature has prescribed? Yes. So the case is moved? Case is moved. Well, what do we do with Mr. Eaton's argument that we're, I take it, his argument is, no, no, you have to get to the merits because if you get to the merits, we're going to win and then the TRO is going to be lifted. Isn't there a Disney song like when you wish upon a star? Well, no, I mean, let's wish. Let's assume that they are correct on the merits and that this court were to write an opinion that says the TRO should not have entered. What's the upshot? Practically speaking, then what happens? If you were to vacate it non-pro-tonk, I suppose, I don't know, could the legislature amend to make their statute retroactive if they thought a little cat and mouse game was going on between the court? I don't know. To be honest with you, your moteness argument, I just blew past it and I wish I hadn't. I wish I had given it more careful consideration. I don't think... Well, it's not a mootness argument. We're not here arguing anything. No, but a mootness... But we're trying to, we have an obligation to figure out whether we've got jurisdiction, right? And if a case is moot, we don't have jurisdiction. We've got no business saying anything. That's the challenge we're faced with. I hear Mr. Eaton say, oh, no, you've got to get into it. On the other hand, I'm wondering, do we have any right to get into it? And that's what we're asking you to address. Well, I will fully adopt the court's, what appears to be a tentative proposition, is that this case is moot on the basis that my client, the presiding judge, has never been removed in any way, shape, or form from his position as a presiding judge and that upon the effective date of the statute, his future term is prescribed and that the governor categorically, flat out, has no power to remove the presiding judge, which I think is the law on the substantive end of it too, but the... And strangely, or perhaps ironically, the governor, is it true that the governor supported the global legislation that included the provision that prevents him from doing what he purported to do to Judge Dunstan? Yes. Well, the governor essentially wanted a unification of the administration, a consolidation. So he might not have, I don't mean to presume that the governor liked this portion of the bill, but he did support the legislation as a whole. Yeah. And that latter portion was added later. It didn't come out of the blue. But was it added in the last couple of weeks? That I can't... Not in the last couple of weeks now, no. But it was... So, I mean, before the... It was added towards the end. And to give you an exact date, I couldn't do that and I looked. I didn't bring my joint appendix. All right, so what happens if... You know, we obviously know about the law. Let's assume we disagree with you and say that the injunctive relief should not have been granted. Then what? Does the law still keep your client in office or does something else happen? My client has always said he would abide by the ruling of the court. At this juncture, he's defying the governor's edict, frankly, as unlawful and an irrigation of power that he doesn't have. But yet, if... You know, it's hard for me to pin down what exactly would be the consequence if you're correct and that statute does say point blank and does have retroactive effect. The governor can't be... Well, it may not be... Yeah, there's no retroactive effect. It's effective when it's effective. It's effective when it's signed into law. But when it was signed into law, the question is who was lawfully in office, right? That's the question. Who was lawfully in office? Mr. Eaton says it has to be the case that it wasn't Judge Dunstan. We're looking at the record and wondering, is that the case or is it the case that Judge Dunstan was in office because he had been in office and a temporary restraining order prevented his removal from office, even if the governor had the power to remove him? But the permanent injunction was entered because the governor did not have the power. So as it stands right now, of course... Was the permanent injunction something that should have been entered? It was entered. I know it was entered. But the question is, was the case moot at the point the legislature acted? Should the district court judge have said, I don't have anything more to say about this. Judge Dunstan was in office because of my temporary restraining or preventing any removal that might have taken place. And now the legislature has spoken. I've got nothing more to say about it. And I shouldn't say anything more about it. If I'm tracking you, I think the mootness would kick in after the judge's ruling, trial court's ruling, saying that he is the judge because there was no intervening interruption of... At the temporary restraining order point. I mean, the question I've got is, if the action of the legislature is the mooting event because it says, Judge Dunstan, it says the current occupant serves until the end of that occupant's term in office. And that current occupant of the presiding judgeship is Judge Dunstan by virtue of the TRO. Then was there any warrant for the district court to enter a permanent injunction? Or should the district court have dismissed the case as moot at that point? I hate to shoot from the hip, but I think he could have done it upon the assurance that this issue was fully and finally resolved by the legislation. And again, I would want to note too, that it was not just a TRO, but it was a... The court entered a preliminary combined with a permanent injunction. So we get a declaratory judgment and a permanent injunction in the final order. So nothing tentative about it. So I guess the trial court should not have refused to rule on the merits on the basis of mootness because it was all a fait accompli because of the court unification bill. But either way, presiding Judge Dunstan remains in office, remains until the term as prescribed by the court unification bill is... Do you want to talk about the merits? I kept you busy on the other... That's fine. I have so much. I'd be very interested in any specific questions. I have volumes and volumes of material on this. I guess this whole case has reminded me of... After reading the biography of Steve Jobs by Time magazine, Walter Isaacson, and he talked constantly about the reality distortion field. That's why every power that the presiding judge has is being trivialized and shrunk down. It's almost like a house of mirrors in the carnival. All of his powers are tiny. They're shrunk down and distorted. But all of the governor's powers are expansive. His chain of command exceeds by his conception far beyond the sphere of the executive branch. And to me, you have a massive case of encroachment on the internal functioning of an autonomous co-equal branch. I think we're talking here not only about textbook separation of powers, but the textbook I'm referring to is not constitutional law. It's high school civics. It's checks and balances. I'm going to have to compliment you. I think it was page 13 of your brief had a pretty interesting paragraph. It said, can the governor order a change of venue in a criminal trial, oversee judges, docket management, procedural issues, discipline magistrates, issue writs of mandamus to magistrates. I thought that was pretty powerful in terms of separation of powers. Thank you very much. But I think that was intended as a reductio ad absurdum rhetorical flourish. And the governor and his counsel say, yeah, we can. These are things we can do, which to me is just preposterous. The venue here is, of course, as I mentioned, has constitutional dimensions, typically in the criminal case. And by the way, the governor and the executive branch is always on the other side of those. Can you respond to Mr. Eaton's argument that, or I take to be the argument that the governor has authority to appoint judges that requires legislative confirmation, has a term limit, but the authority to designate a presiding judge doesn't have similar. Limitations that leads to the implication that it's an at will appointment. He can appoint, he can remove because it doesn't have the same sort of statements in it that exists with respect to appointment to the office of judge itself. What's your response to that? Well, I think that's a non sequitur because in each case, number one, dictionary definition designate is about the same as appoint. He doesn't have the ability to remove the judges he appoints, nor for any principled reason or distinction should he have the ability to remove without cause the judge he designates. And to me, if the converse were true, it would totally violate the spirit of the talked about in Kendall to have a removal power of any kind. You have to find it somewhere in the revised organic act. Couldn't find it for the legislature and certainly can't find that for the executive branch. And we talked about the reference in the revised organic act to no, to the absence, total absence of any removal power of appointees with quasi judicial functions. And that's purely a tip of the hat to Humphrey's executor and the Weiner case. I've left so much out. You briefed this really thoroughly. So both sides did. Thank you. I did want to note in passing, if you'll permit me, that on the doors of the United States Supreme Court, 13 ton bronze doors, there's a bass relief of Sir Edward Coke when he was chief judge of the Common Court of Pleas, ousting King James I from his courtroom. And King James had removed him from his position as chief judge at the time and had tried to influence his decisions. That in turn led to the Coke Institute, that in turn led to the British active settlement, the precursor of the Declaration of Independence. There's some marvelous history here and some history repeating itself with the removal of a chief judge or presiding judge as having historical consequence. And I hope the court will take this, I know it will, as a very, very serious constitutional principle at stake as it has been applied by the revised Organic Act. Thank you, counsel. Thank you so much. And we'll hear from Mr. Eaton. Thank you, Your Honor. I'll be brief and just respond to the points that were made by Mr. Berry. I am initially shocked and dismayed at his craven reversal of position on the mootness issue, although I don't blame him really. A couple things on mootness, Your Honor. The language in the act, two things. The act, if the legislature had intended to capture this case, they could have done so by making it retroactive. It's civil legislation. There's no problem with them doing that. They elected not to do that, which I think suggests that they were not trying to resolve this dispute. And the language of Section 19 of the bill, the nothing contained in this title shall be construed to grant authority to the governor to remove, and it lists more or less every judicial official in the islands, is classic punt language. It doesn't say he can't remove them. It just says it won't be construed that way. I don't think you can put a lot of emphasis on what that actually means. Your argument is that although the legislature went out of its way to say nothing here and should be construed as giving the governor power to do X, Y, and Z, that's really not them saying the governor doesn't have that power. That's them just saying we have no position on the matter. At most, Your Honor, it's them saying he doesn't have it under the new statute, which, if anything, implies that he did have it under the old one. You can read that either way. You can take anything from it. Again, let's assume you're dead right on the merits. Let's say the governor did have the power to do it under the old regime, didn't get it done, and the reason he didn't get it done was a federal judge, Judge Gomez, stepped in and said, I'm not going to let you do it, and he was never able to efficaciously remove presiding Judge Dunstan. As a matter of fact, it didn't happen. Now, if I'm wrong about that, please show me how, when it happened. Well, I think, Your Honor, if indeed we are correct that the district court lacked federal question jurisdiction, that there was no federal jurisdiction under this, then everything it did is void. It never happened. It's void ab initio, which returns us to the point when that happened, which admittedly, I think there is a certain amount of construction you have to do. But is it really void ab initio, or is it just void when this court issues an order superseding it, telling it it was void? I think it's void ab initio. I mean, if it didn't have jurisdiction, then its orders, whether they were in effect for a year or three months, can't have had effect, right? I mean, if it didn't have jurisdiction, it had no jurisdiction to enjoin anyone to do anything. So I don't think that could be the right answer. So your argument is that we have to decide the jurisdictional point by deciding the merits, or is it enough to say this clearly implicated a separation of powers question under the revised Organic Act, so there was jurisdiction, and we don't have to go farther than that? No, as we've argued, Your Honor, it is not enough that there is an issue presented that implicates the revised Organic Act. Under modern Supreme Court arising under jurisprudence, the existence of a federal statute and my desire to enforce that statute, even if I have standing to do it, is not sufficient to confer federal jurisdiction. There has to be a cause of action created by federal law. And the only way you get there is if you look at a statute, assuming if there's no express one, and there isn't here, right? There's no 1983 that governs here. No, no. The argument on the other side is there is a quasi-constitutional issue raised by the revised Organic Act. You can't allow them to do what they're doing. Now, whether in the end they're right or wrong about that, that's a federal question, isn't it? It's the revised Organic Act. The question is, can the governor as the executive remove a presiding authority in a coordinate branch of government? That's a question that implicates the revised Organic Act. And that's a federal question. Where's the flaw in that? The flaw in that, Your Honor, is that the existence of an argument in support of his local law action, I think everyone agrees that the roots of his action are local, right? It's essentially an employment action. He lost his job. No, they don't all agree with that. That's the whole point. I mean, you're asking us to assume your conclusion and say we have no jurisdiction because we assume the conclusion the government wants us to assume. They say this raises an issue. Now, maybe they're right or maybe they're wrong, but that's what federal question jurisdiction is. It's not who's right and who's wrong, but is there a question? Are you asserting that it's actually frivolous, there's not even any question under the revised Organic Act? Because if that's your assertion, that's a pretty tough row to hoe, isn't it? It is not our assertion and never has been, Your Honor. Okay, so if there's a question, it's a federal question because it implicates the revised Organic Act, does it not? No, Your Honor, that is not correct. Under Gunn v. Minton and other Supreme Court cases, including cases of this Court, if you do not have a federally created cause of action, and he has never identified one, and we can talk about how you identify a federal cause of action, Congress has to have evidence and intent to create both a right and a remedy. That's foreign book law, Your Honor. Who's got the right, if not the occupant of the office, to raise a question of separation of powers? To say, he can't remove me, I'm in the office. His action in removing me violates the separation of powers. Your Honor, no one's saying he can't say that, but that doesn't give the federal court jurisdiction over that question. He can bring that. Put us in a world, for example, let's go back a little ways, before 1983. Let's talk about the classic case of the Fourth Amendment case. Before 1983 existed, if I, in a state, am accusing a public official of invading my rights under the Fourth Amendment, and I sue him, I can't get into federal court on that. Now, why does the Fourth Amendment exist, if not for me to enforce my rights under it? But there was no cause of action that permitted it until Congress enacted one, and there has never, in my knowledge, Your Honor, been a separation of powers case brought under a specific cause of action to enforce the separation of powers. If you look at the cases, Mistretta, Chadha, Boucher, Morrison versus Olson, they all arose under other causes of action. There simply isn't a cause of action here, Your Honors. You can't imply one if there isn't one there, and that's all I have. I just have one quick, I'm sorry, back to the mootness point where we're getting you to dance back and forth here. I apologize. That's why I'm here, Your Honor. But if you win, what's the remedy? What happens? If I, assuming I win on jurisdiction. Let's say the case isn't moot and the governor did have the power to remove Judge Dunstan as presiding judge. What happens? I think the temporary restraining order is dissolved. We return to, I think it was July 24th, which is the date in issue. Judge Dunstan is thereby removed on July 25th. It may have been June 25th, but whatever the governor's letter said, one of those two dates would be the effect of his dismissal, and the TRO entered the previous day. So we go back to then. As of the 25th, Judge Dunstan was removed. Then you get to an interesting question of who was the presiding judge, but I think the reasonable conclusion is that having expressed his intention to designate Judge Willicks had been prevented from doing so by an order that's been vacated. The only reasonable conclusion is to conclude that he can appoint Judge Willicks back to that point retroactively. I think that's got to be right. And then, so then your client enters some kind of a mandate from the governor's office that says from June 25th, 2016 until the date the legislation was passed, Willicks was the presiding judge. I think that's right, Your Honor. It's not an elegant solution. And then, but we all agree that from the date the legislation was passed, Judge Dunstan is the presiding judge. No. No? So you think Willicks, okay, because Willicks then continues by virtue of the legislation. I see. So if, okay. So even though Willicks was never appointed to the office, he continues in an office, I guess we all agree that the legislation causes the incumbent presiding judge to continue in office until the date specified in the legislation. Right. Yes. That's what it says. All right. All right. So then you're saying a judge who was never appointed to the office, but who should have been appointed to the office, gets the benefit of that continuation. I think that's right, Your Honor, because I just don't see how else you could do it. If indeed the district court's order was incorrect, and if we suggested it's void because there was no subject matter jurisdiction, I think there's an artifice here. But you have to go back to the point at which the governor had expressed his intention to Willicks was only prevented from doing that by an order that's now been vacated. I don't see how it would be reasonable not to return to that point and permit him to do that in a retroactive way. Thank you, Your Honors. Thank you. Take the case under advisement. Thank counsel for excellent briefing and argument.